IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 17, 2011 Session

## IN RE: ESTATE OF INA RUTH BROWN

**Appeal from the Chancery Court for Knox County, Probate Division**
**No. 61159-3     Michael W. Moyers, Chancellor**

---

**No. E2011-00179-COA-R3-CV-FILED-OCTOBER 4, 2011**

---

This appeal arises from a dispute concerning a contract to execute mutual wills. Ina Ruth Brown ("Mrs. Brown"), and her husband, Roy Brown, Jr. ("Mr. Brown"), executed mutual wills as agreed by contract. After Mr. Brown's death, Mrs. Brown executed a new will. Mrs. Brown died. Rockford Evan Estes ("Defendant"), Mrs. Brown's son, submitted the new will for probate. Mr. Brown's adult children, Roy E. Brown, III, Joan Brown Moyers, and Donna Brown Ellis ("the Plaintiffs") filed this will contest suit in the Chancery Court for Knox County, Probate Division ("the Trial Court"), contesting the new will on the basis that, among other things, the mutual wills between Mr. Brown and Mrs. Brown were irrevocable. Both the Plaintiffs and Defendant filed a Motion for Summary Judgment. The Trial Court denied Defendant's motion, granted the Plaintiffs' motion for summary judgment, and voided the new will created by Mrs. Brown. Defendant appeals. We hold that the Trial Court did not err in denying Defendant's motion for summary judgment because the Trial Court did have subject matter jurisdiction to hear this will contest based on this breach of contract claim. We further find that the Trial Court did not err in granting the Plaintiffs' motion for summary judgment after also finding that the June 13, 2002 contract to execute mutual wills was supported by adequate consideration. We affirm the judgment of the Trial Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., and JOHN W. MCCLARTY, J.J., joined.

Mark E. Brown and Maurice W. Gerard, Knoxville, Tennessee, for the appellant, Rockford Evan Estes.

William L. Waters, Knoxville, Tennessee, for the appellees, Roy E. Brown, III, Joan Brown Moyers, and Donna Brown Ellis.

# OPINION

## Background

In October 1999, Mrs. Brown and her husband, Mr. Brown, entered into a contract to execute wills.[1] According to Mr. Brown's will, in part, Mrs. Brown was to receive a life estate in residential property at Browns Gap Road and an adjoining one-fourth acre lot. At her death, the property would pass per stirpes to the Plaintiffs. Pursuant to Mrs. Brown's will, in part, Mr. Brown was to receive a life estate in property at Irolla Road that would pass to Mrs. Brown's sons upon Mr. Brown's death. In May 2002, Mrs. Brown and Mr. Brown transferred the Browns Gap Road property by warranty deed to Mr. Brown's son, Roy Brown, III, and his wife, Teresa Gail Brown. The deed for this transfer was recorded in June 2002.

On June 13, 2002, Mrs. Brown and Mr. Brown signed a contract to execute mutual wills. The parties agreed that their respective wills could not be changed without the consent of the other, and the contract further stated, in part:

> 3. Each party agrees that in the event of the death of one of them, the surviving party shall have no right to change his or her Will dated the 13 day of June, 2002, nor shall the surviving party have the right to dispose of any property, real or personal, except as permitted under the terms of the other's Will dated 13 June, 2002, a copy of which is attached hereto.

Mrs. Brown's will included the following provision:

> My real estate is to be retained for the use of my husband Roy E. Brown, Jr. for the duration of his lifetime. At his death all property is to be given per stirpes in equal shares to Roy E. Brown, III, Joan Brown Moyers, Donna Brown Ellis, and my son Rockford Evan Estes.

Mr. Brown's will contained a similar reciprocal provision. Mr. Brown died shortly after the signing of the June 13, 2002 contract to execute wills.

On June 28, 2002, Mrs. Brown executed a new will, revoking previous wills. The June 28, 2002 will left, per stirpes, all of Mrs. Brown's tangible personal property not held solely for investment purposes and residuary estate not effectively disposed of elsewhere

---

[1] In Mr. Brown's Last Will and Testament, the date under Mr. Brown's signature reads "10-27-97" but the date elsewhere in the documents is given as October 27, 1999.

in the will to her son, Defendant. Mrs. Brown died in February 2003. In March 2003, Defendant filed his Petition for Probate of Will and Granting of Letter Testamentary in the Trial Court. The June 28, 2002 will subsequently was admitted to probate.

In February 2004, the Plaintiffs filed their Complaint to Contest Will and Complaint for Declaratory Judgment. The Plaintiffs argued, among other things, that the June 13, 2002 contract to execute wills precluded the June 28, 2002 will and that Mrs. Brown was unduly influenced by Defendant. In August 2006, Defendant filed a motion for summary judgment. Defendant argued that the Trial Court lacked subject matter jurisdiction to hear a will contest based on this contractual dispute. Defendant further argued that the Plaintiffs had failed to carry their burden of proof as to claims of undue influence. The Trial Court denied Defendant's motion for summary judgment with respect to his argument that the Trial Court lacked subject matter jurisdiction but granted Defendant's motion for summary judgment with respect to the Plaintiffs' claim of undue influence.

In May 2010, the Plaintiffs filed a motion for summary judgment. The Plaintiffs, in their accompanying memorandum of law, requested that the Trial Court void Mrs. Brown's June 28, 2002 will. In June 2010, Defendant filed another motion for summary judgment. In his memorandum of law, Defendant argued primarily that the June 13, 2002 will contract was not supported by valid consideration. Defendant characterized the June 13, 2002 will as Mrs. Brown "giving three-fourths (3/4) of her commercial property to Roy Brown's children in consideration of having no place to live after Roy, Jr.'s death and for her son [Defendant] to have an interest in real property that Roy Brown, Jr. did not own." A hearing on these cross-motions for summary judgment was held in September, 2010.

In January 2011, the Trial Court entered an order denying Defendant's motion for summary judgment and granting the Plaintiffs' motion for summary judgment. The Trial Court found that the June 13, 2002 contract to execute wills was supported by adequate consideration and declared the June 28, 2002 will of Mrs. Brown null and void. Defendant appeals. We affirm the judgment of the Trial Court.

## Discussion

Though not stated exactly as such, Defendant raises two issues on appeal: 1) whether the Trial Court erred in denying Defendant's motion for summary judgment and holding instead that the Trial Court had subject matter jurisdiction to hear this will contest based on a breach of contract claim; and 2) whether the Trial Court erred in denying Defendant's motion for summary judgment after finding that the June 13, 2002 contract to execute mutual wills was supported by adequate consideration.

As this appeal stems from a summary judgment disposition, we will apply the standard of review for summary judgment cases.[2] Our Supreme Court reiterated the standard of review in summary judgment cases as follows:

> The scope of review of a grant of summary judgment is well established. Because our inquiry involves a question of law, no presumption of correctness attaches to the judgment, and our task is to review the record to determine whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cowden v. Sovran Bank/Cent. S.*, 816 S.W.2d 741, 744 (Tenn. 1991).

> A summary judgment may be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993). The party seeking the summary judgment has the ultimate burden of persuasion "that there are no disputed, material facts creating a genuine issue for trial . . . and that he is entitled to judgment as a matter of law." *Id*. at 215. If that motion is properly supported, the burden to establish a genuine issue of material fact shifts to the non-moving party. In order to shift the burden, the movant must either affirmatively negate an essential element of the nonmovant's claim or demonstrate that the nonmoving party cannot establish an essential element of his case. *Id*. at 215 n.5; *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8-9 (Tenn. 2008). "[C]onclusory assertion[s]" are not sufficient to shift the burden to the non-moving party. *Byrd*, 847 S.W.2d at 215; *see also Blanchard v. Kellum*, 975 S.W.2d 522, 525 (Tenn. 1998). Our state does not apply the federal standard for summary judgment. The standard established in *McCarley v. West Quality Food Service*, 960 S.W.2d 585, 588 (Tenn. 1998), sets out, in the words of one authority, "a reasonable, predictable summary judgment jurisprudence for our state." Judy M. Cornett, *The Legacy of Byrd v. Hall: Gossiping About Summary Judgment in Tennessee*, 69 Tenn. L. Rev. 175, 220 (2001).

> Courts must view the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997). A grant of summary judgment is appropriate only when the facts and the reasonable inferences from those facts would permit a reasonable person to reach only one conclusion. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000). In making that assessment, this

---

[2]The parties disputed certain non-material facts.

Court must discard all countervailing evidence. *Byrd*, 847 S.W.2d at 210-11. Recently, this Court confirmed these principles in *Hannan*.

*Giggers v. Memphis Housing Authority*, 277 S.W.3d 359, 363-64 (Tenn. 2009).

We first address whether the Trial Court erred in denying Defendant's motion for summary judgment after instead holding that the Trial Court did have subject matter jurisdiction to hear this will contest based on this alleged breach of contract to execute mutual wills. We have previously discussed subject matter jurisdiction and its significance:

A court must have jurisdiction over the subject matter of the proceeding as well as over the parties. *State ex rel. Whitehead v. Thompson*, No. 01A01-9511-CH-00538, 1997 WL 749465 at *2 (Tenn. Ct. App. Dec. 5, 1997). The question of subject matter jurisdiction relates to a court's power to adjudicate a particular type of controversy. *Toms v. Toms*, 98 S.W.3d 140, 143 (Tenn. 2003); *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000). Subject matter jurisdiction "relates to the nature of the cause of action and the relief sought" and "is generally defined by the constitution or statute and conferred by the authority that organizes the courts." *Meighan v. U.S. Sprint Communications Co.*, 924 S.W.2d 632, 639 (Tenn. 1996); *Kane v. Kane*, 547 S.W.2d 559, 560 (Tenn. 1977). The parties cannot confer subject matter jurisdiction on a court by either appearance, plea, consent, silence, or waiver. *Dishmon v. Shelby State Cmty. Coll.*, 15 S.W.3d 477, 480 (Tenn. Ct. App. 1999). A court cannot enter a valid, enforceable order without subject matter jurisdiction. *Brown v. Brown*, 198 Tenn. 600, 610, 281 S.W.2d 492, 497 (1955); *SunTrust Bank v. Johnson*, 46 S.W.3d 216, 221 (Tenn. Ct. App. 2000). Accordingly, when subject matter jurisdiction is questioned the court must first determine the nature of the case and then ascertain whether the Tennessee Constitution, the General Assembly, or the common law have conferred on it the power to adjudicate its cases. *Staats v. McKinnon*, 206 S.W.3d 541 at 542 (Tenn. Ct. App. 2006). Subject matter jurisdiction may be raised at any time by the parties or by the appellate court *sua sponte* on appeal. *County of Shelby v. City of Memphis,* 211 Tenn. 410, 365 S.W.2d 291 (Tenn. 1963).

*Graham v. Graham*, No. E2008-00180-COA-R3-CV, 2009 WL 167071, at *6 (Tenn. Ct. App. January 26, 2009), *no appl. perm. appeal filed*.

The briefs of both parties discuss *Rogers v. Russell*, 733 S.W.2d 79 (Tenn. Ct. App. 1986), a case dealing with the alleged irrevocability of a prior joint will and the proper procedure for challenging a subsequent will. We stated, in part:

In accordance with the majority rule, a revoked will, even if it is a joint will, should be denied probate even though its revocation was a breach of contract, and the substituted will should be admitted to probate if it is otherwise proper. Then the persons claiming that the decedent's execution of a subsequent will breached a contract may seek relief by filing a claim against the decedent's estate.

*Rogers*, 733 S.W.2d at 85 (footnote omitted).

Our Supreme Court addressed circumstances similar to those of the instant appeal in the case of *Junot v. Estate of Gilliam*, 759 S.W.2d 654 (Tenn. 1988), an Opinion that discuses *Rogers*. The parties here sharply dispute the effect of *Junot*. Our Supreme Court, in holding that an action to void a will based on the alleged irrevocability of a prior will could proceed as a will contest, stated:

It is clear that under the provisions of T.C.A., § 16–10–111, the law court had jurisdiction to entertain any suit of an equitable nature and power to decide it upon principles of equity in the absence of an objection to the exercise of such jurisdiction. No such objection was made. On the contrary the parties expressly consented. We find without merit the contention of appellants that the case should have been transferred to the chancery court.

The case relied upon by appellants, *Rogers v. Russell*, 733 S.W.2d 79 (Tenn. App. 1986) supports their position here except in counties having separate probate and chancery courts. In that case the Court of Appeals held that in actions of this nature proper procedure would be to seek relief by filing a claim against the decedent's estate in the probate court. *See* 733 S.W.2d at 85. Further, in that case, specific objection had been made by the proponents of the subsequent will to the jurisdiction of the circuit court to try the alleged breach of contract claim. There had been no consent to trial in the circuit court as in the present case.

It appears from an examination of the cases on this subject that various procedures have been followed in actions such as this. In one of the leading cases relied upon by appellants, *Harris v. Morgan*, 157 Tenn. 140, 7 S.W.2d 53 (1928) suit was brought in chancery court for specific performance of a contract not to revoke a will and for the purpose of imposing a trust upon specific real estate. The Supreme Court held that such an action would lie, reversing a decision of the chancellor who had sustained a demurrer on the issue of the statute of frauds.

In another case, *Petty v. Estate of Nichols*, 569 S.W.2d 840 (Tenn. App. 1977) the matter proceeded by a will contest and jury trial in circuit court.

As pointed out by the Court of Appeals in the *Rogers* case, *supra*, suits such as this are not strictly will contests, because any will is revocable. They are predicated upon a claim of prior contract between the testator and another. It is the contract which is sought to be enforced and which is alleged to be irrevocable, not the subsequent will itself. This distinction was recognized by this Court in the case of *Church of Christ Home for Aged, Inc. v. Nashville Trust Co.*, 184 Tenn. 629, 637, 202 S.W.2d 178, 181 (1947). That action had been instituted as a suit for specific performance in chancery court. In its opinion, this Court called "highly technical" the distinction between a suit on an alleged contract and a claim that a prior will was irrevocable.

We are in agreement with the Court of Appeals in the *Rogers* case, 733 S.W.2d at 85, that actions such as this could be prosecuted by a claim against an estate in probate court. In the present case, however, the appellants alleged that the probate of Mrs. Gilliam's second will was void and that instead her prior will executed in 1974 should be probated and established. At least in form, a will contest was presented. This is the reason the probate judge certified the matter to the law court. In the law court, no objection was made to equitable jurisdiction being exercised, including the imposition of a constructive trust if deemed appropriate. Under the circumstances, we find without merit the jurisdictional issue sought to be raised by appellants.

*Junot*, 759 S.W.2d at 655-56.

We do not interpret *Junot* to mean that a party challenging a will on the basis that a prior contractual obligation precludes that will must do so by filing a claim against the estate. While one may file a claim against the estate in such a scenario, *Junot* shows that is only one option with a will contest being another permitted option. The Supreme Court in *Junot* allowed that case to proceed as a will contest instead of requiring it to be filed as a claim against the estate. *Junot*, 759 S.W.2d at 656. In doing so, the Supreme Court must have determined that the trial court had jurisdiction to hear that will contest as the trial court's order would have been an invalid and unenforceable order if the trial court did not have jurisdiction. The Supreme Court in *Junot* went on to find that the evidence was insufficient to prove a contract to make irrevocable wills in that case. *Id.* at 657-58.

We find no prohibition against parties proceeding, as did the Plaintiffs in this case, through a will contest. Defendant vigorously argues that his objection early in this case

-7-

to the Trial Court's subject matter jurisdiction is an important and distinguishing point from *Junot*. We respectfully disagree. In *Junot,* one issue was whether or not the law court had jurisdiction to hear that suit as equitable relief was requested. *Junot*, 759 S.W.2d at 655. The Supreme Court held that as there was no objection to the exercise of such jurisdiction, the law court had subject matter jurisdiction. *Id.* at 656. That particular jurisdictional question concerning equitable relief being requested is not relevant here. What is relevant here is that our Supreme Court in *Junot* allowed that dispute concerning a contract not to revoke a will to proceed as a will contest and not as a claim against the estate. Just as in *Junot*, the Trial Court either had subject matter jurisdiction to try this will contest or it did not. We hold that the Trial Court did, as in *Junot*, have subject matter jurisdiction to hear this will contest.

We acknowledge a relatively recent Opinion of ours that may be somewhat at odds with our analysis herein. We addressed another action concerning an alleged prior, irrevocable will in *In re Estate of Allen Dee Cook*, No. E2004-00293-COA-R3-CV, 2004 WL 3021131 (Tenn. Ct. App. Dec. 30, 2004), *no appl. perm. appeal filed*.[3] We stated, in relevant part:

> The first issue raised by the plaintiffs concerns the trial court's reliance on our decision in *Rogers v. Russell*, 733 S.W.2d 79 (Tenn. Ct. App. 1986). The trial court relied on that case to support its holding that the plaintiffs failed to properly bring a claim against the estate seeking to enforce the contract not to revoke the 1992 joint will. In *Rogers*, this court addressed the manner by which one may assert an allegation that a will executed prior to the one admitted to probate was irrevocable. *Id.* at 83. We held that a will contest case is not the proper proceeding within which to assert the irrevocability of a prior will. *Id.* In so holding, we noted the "difference between the testamentary and contractual aspects of a joint will." *Id.* We further held that a party seeking to raise the contract issue must proceed by filing a *claim against the decedent's estate*, averring that the decedent breached a contract by executing a subsequent will. *Id.* at 85.

> The plaintiffs seem to argue that *Rogers* provides for two different "vehicles" for pursuing a complaint for breach of contract not to revoke a joint will. In support of this proposition, the plaintiffs cite language from *Rogers*, which language comes from a treatise:

> > Frequently joint or mutual wills are made in pursuance of an agreement or compact not to revoke them. Here it is important

---

[3] No party to this appeal cited this case.

to distinguish between the concept of wills and that of contracts. Our law has no separate concept of "will made in pursuance of contract;" we must treat the will part as a will and the contract part as a contract.

Viewed in the aspect of a will, such instruments do not differ from other wills. In order to be effective, they must be admitted to probate and they are revocable although there has been an agreement not to revoke. The matter of the contractual aspect does not properly arise upon probate, but only when the agreement is sought to be established as a claim against the estate, *or in a proceeding against the successors of the decedent*.

*Id.* at 84 (quoting T. Atkinson, *Handbook on the Law of Wills* § 49, at 224 (2d ed.1953)) (emphasis added). By relying upon the above-cited language, particularly the clause providing that a claim to enforce a contract may be "established as a claim against the estate, *or* in a proceeding against the successors of the decedent," *id.* (emphasis added), it appears that the plaintiffs understand *Rogers* to stand for the proposition that such a claim can be made by filing a separate lawsuit against the personal representatives of the deceased rather than by filing a claim in probate against the estate.

*Rogers* does seem to suggest some type of alternative way to pursue the subject claim. Yet, even assuming this is true, we are dealing in the instant case with a claim that was filed in probate court, and there is certainly nothing in *Rogers* to suggest that a claimant can pursue different remedies for the same cause of action in different forums at the same time. The plaintiffs pursued their claim to enforce the contract not to revoke the 1992 will in probate court, and, under *Rogers*, that court had jurisdiction to dispose of that claim. The only other proceeding filed by the plaintiffs was the complaint in circuit court in connection with their *will contest*, a proceeding that is still pending there. It was subsequently determined by the circuit court that it lacked jurisdiction to try the breach of contract claim. As previously noted, the circuit court remanded the case to the trial court for the purpose of deciding the breach of contract claim.

We believe that *Rogers* stands for the proposition that a claim for breach of contract not to revoke a will, *however it is styled*, must be filed in probate court, must be timely filed, and must satisfy the procedural requirements of Tenn. Code Ann. § 30-2-307 (2001). Since the plaintiffs filed

a claim in the trial court, we hold that it was properly addressed by that court.

*In re Estate of Allen Dee Cook*, 2004 WL 3021131, at **6-7.

Thus, in apparent contradiction to *Junot*, it appears that *In re Estate of Allen Dee Cook* arguably may stand for the proposition that a challenge to a will based on the contractual irrevocability of a prior will must proceed as a claim against an estate and adhere to all of the procedural rules, including filing deadlines, pertinent to such a claim.[4] Defendant argues that the Plaintiffs filed their complaint outside the statutory period for claims against an estate.

We characterize this as being an "apparent contradiction to *Junot*" because this Court in *In re Estate of Allen Dee Cook* did acknowledge that *Rogers* suggested that a claim based on the alleged contractual irrevocability of a prior will could be pursued in alternative ways. *In re Estate of Allen Dee Cook*, 2004 WL 3021131, at *6. This Court in *In re Estate of Allen Dee Cook* noted that case did involve a claim filed in probate court. *Id.* Plaintiffs in that case also had filed a separate complaint in circuit court as a will contest. *Id.* This Court in *In re Estate of Allen Dee Cook* stated correctly that nothing in *Rogers* stood for the proposition that a claimant could pursue both a claim filed in probate against the estate and a separate will contest. *Id.* Here, the claimants have not attempted to pursue "different remedies for the same cause of action in different forums at the same time." *Id.* The Plaintiffs in the instant appeal did not file a separate claim against Mrs. Brown's estate in addition to pursuing this will contest filed in the Probate Division of the Knox County Chancery Court.

In *Junot*, as we have already observed, our Supreme Court addressed the merits of a claim tried as a will contest based on an alleged violation of a contract to execute mutual wills indicating that the trial court in *Junot* had jurisdiction and that such a will contest suit is permissible. *Junot*, 759 S.W.2d at 657-58. We defer, as we must, to our Supreme Court, notwithstanding *In re Estate of Allen Dee Cook*.[5] We hold that the Trial Court did not err in denying Defendant's motion for summary judgment because the Trial Court did, in fact, have subject matter jurisdiction to hear the Plaintiffs' contract-based will contest claim.

We next address whether the Trial Court erred in denying Defendant's motion

---

[4]*Junot* is not discussed in *In re Estate of Allen Dee Cook*.

[5] If the Supreme Court is asked to hear the appeal of our decision, we respectfully suggest that such an appeal would be appropriate to allow the Supreme Court to state definitively exactly where and how such an action or claim concerning the alleged contractual irrevocability of a prior will must be pursued.

for summary judgment and instead finding that the June 13, 2002 contract to execute mutual wills was supported by adequate consideration. Defendant argues that the remainder interest granted to the Plaintiffs in the Irolla Property was "in consideration of [Mrs. Brown's] being tossed out in the street after Roy, Jr.'s death and her son getting an interest in real estate that was not in existence." We emphasize that we are not to inquire into the wisdom or rationale of Mrs. Brown's choices. Rather, the issue before us is whether the June 13, 2002 contract to execute mutual wills was supported by adequate consideration.

Mutuality of promises is "ample" consideration for a contract. A mutual promise "in itself would constitute a sufficient consideration." *Rodgers v. Southern Newspapers, Inc.*, 214 Tenn. 335, 342, 379 S.W.2d 797, 800 (1964). *See also Buraczynski v. Eyring*, 919 S.W.2d 314, 321 n. 6 (Tenn. 1996). In the instant appeal, it is clear that Mrs. Brown and Mr. Brown exchanged promises in the June 13, 2002 contract to execute mutual wills, and did just exactly that. As a result of those promises, Mrs. Brown and Mr. Brown also agreed that their wills could not be altered without the consent of the other, which we regard as additional evidence of consideration. The results of those promises are, again, not the objects of our inquiry here.

We find the mutual exchange of promises between Mrs. Brown and Mr. Brown adequate consideration to support their contract. Whether one characterizes the June 13, 2002 documents as modifications of the 1999 wills or new wills altogether, the June 13, 2002 contract to execute wills was supported by adequate consideration. The Trial Court properly denied Defendant's motion for summary judgment. We affirm the judgment of the Trial Court.

## Conclusion

The judgment of the Trial Court is affirmed. This cause is remanded to the Trial Court for collection of costs below. Costs on appeal are taxed to the appellant, Rockford Evan Estes, and his surety, if any, for which execution may issue if necessary.

_____
D. MICHAEL SWINEY, JUDGE

-11-